MAY TERM, 1882, No. 72.                     MAY 31, 1882.

# Wareham *v.* Hummel.

A owned a lot of ground subject to a mortgage in favor of C, and sold part of the lot to D, who agreed to pay the mortgage as part of his purchase money. Afterwards A sold the remaining part of the lot to E, who retained $400 of the purchase money to protect himself from said mortgage, and agreed to pay the same to A upon satisfaction thereof. C proceeded to foreclose the said mortgage, and upon the day appointed for sale, E paid the mortgage and costs, being more than $400, to protect his property from sale. C's attorney, without E's direction or authority, assigned the judgment and mortgage to F, assignee of A's husband, for the benefit of creditors. After frequent requests, D paid to F the amount due upon this judgment and mortgage, and they were satisfied of record. The assignment and satisfaction were made without the knowledge of A, who immediately upon learning of them brought suit against E for the $400 retained by him.

*Held* that E was entitled to protect his property by such payment, and that, as he had given no directions that the mortgage and judgment should be assigned instead of satisfied, the payment was a complete defense.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

[Wareham *v.* Hummel.]

Error to Court of Common Pleas of *Dauphin County*.

*Assumpsit* by Samuel Wareham and Susan Wareham, his wife, in right of the said Susan Wareham against George W. Hummel.

On the trial in the Court below, before J. W. SIMONTON, P. J., the following facts appeared :

Mrs. Susan Wareham owned a lot of ground in Harrisburg on Second street, extending back to Penn avenue. This lot was subject to the lien of a mortgage in favor of John Forster's executors, and assigned to Ellen Forster, now Mrs. Ellen Bent, for $333, with interest from October 3, 1875. J. Wesley Awl bought that part of the lot fronting on Second street from Mr. Kirby, a vendee of Mrs. Wareham, who had agreed to pay this mortgage as part of his purchase money, but had failed to do so. Mr. Awl then agreed to take Mr. Kirby's bargain, and to pay this mortgage of $333 and interest as part of his purchase money.

On April 1, 1874, Mrs. Susan Wareham sold the Penn avenue part of this lot, on which were built three houses, to George W. Hummel, the defendant, for $2,400. Hummel paid $2,000 cash and received the deed. By agreement with Mrs. Wareham, he retained $400 of the purchase money due her in order to protect himself against the lien of this mortgage, and gave to Mrs. Wareham the following obligation :

HARRISBURG, PA., *April 4, 1874.*

On satisfaction of a mortgage from Samuel Wareham and Susan Wareham, his wife, to the executors of General John Forster, recorded in Mortgage Book Q, page 266, and assigned to Ellen R. Forster, I hereby promise to pay to Susan Wareham the sum of four hundred dollars, it being part of the purchase money for property bought by me from Susan Wareham, covered by this mortgage.

GEORGE W. HUMMEL.

At the time of the purchase and the giving of this obligation, Hummel knew that Awl had agreed to pay this mortgage and interest. He preferred to retain the $400 of the purchase money under the terms of the above obligation. Hummel paid Mrs. Wareham $130 on this obligation, on account of principal and interest prior to the time of the trial.

On November 10, 1876, Mrs. Ellen Bent issued a *scire facias* on the mortgage, and obtained judgment for

[Wareham v. Hummel.]

$442 04.  A *levari facias* was issued against the houses and lots sold to Mr. Awl and Mr. Hummel, and they were advertised by the sheriff for sale on April 16, 1877. On this day, April 16, 1877, Mr. Irwin, as attorney for Mrs. Bent, Mr. McAlarney, attorney for Wareham and Hummel, and Mr. Hummel, met in the prothonotary's office, where Mr. Hummel paid to Mr. Irwin the debt, interest, and costs.  Mr. Hummel testifies : "I paid the debt, interest, and costs to Mr. Irwin ; I said nothing about satisfying, nor inquired about satisfying it ; I took it for granted that when I paid the debt and costs it would be satisfied as a matter of course.  I took it for granted that Mr. Irwin, being the attorney of the person who held the mortgage, if he got the money, he would certainly go and satisfy the mortgage."

Instead of satisfying this judgment, Mr. Irwin assigned it to John W. Killinger, and the *levari facias* was stayed.

Mr. and Mrs. Wareham were ignorant of this transaction, and knew nothing of the assignment to Killinger. J. W. Awl testified that he knew nothing of this assignment at the time it was made.  Afterwards, Mr. Killinger and Mr. McAlarney made frequent applications to him, and requested him to pay them this mortgage and the judgment based on it.  On December 22, 1877, Mr. Awl paid this money to Killinger, who satisfied the judgment and the mortgage, which had also been assigned to him.

Samuel Wareham had made an assignment for the benefit of his creditors, and had appointed John W. Killinger his assignee.  Mrs. Wareham's separate property was in no way involved in the assignment.  Killinger had nothing to do with her property, yet he claimed to hold the money received from Mr. Awl because Mr. Wareham was indebted to him on account of this assignment.

About April 12, 1880, upon an examination of the record of the Forster mortgage, it was learned by Mrs. Wareham for the first time of the assignment to Mr. Killinger, the payment to him by Mr. Awl, and the satisfaction by Killinger.

After demand being made upon Mr. Hummel for the balance due on his obligation, this suit was brought.

The Court below charged the jury, *inter alia*, as follows :

" Mr. Hummel testifies that he paid to Mr. Irwin—that he said nothing about satisfying, nor inquired about satisfying it ; that he took it for granted that when he paid the debt—the property being levied upon and up for sale—that when he paid the debt and costs, it would be

paid and satisfied as a matter of course. [Mr. Irwin did transfer it to Mr. Killinger; there is no doubt about that. Mr. Irwin says he must have had some direction from some person to do that, and he infers from this that the direction came from Mr. Hummel; but he says at the same time that he has no recollection that Mr. Hummel directed him to transfer it;] and Mr. Hummel testifies positively that he did not give such direction, but that he took it for granted it would be satisfied. Mr. Killinger tells us that, while he did not know at the time that it was transferred to him, yet he was assignee for the benefit of creditors of Mr. Wareham, and he had been advancing money for Mr. Wareham, and he supposed that Mr. Wareham had directed it to be transferred to him for his protection, and to keep it alive as against Mr. Awl, who had promised to pay it, Mr. Awl having purchased some of the property that was bound by this mortgage. But Mr. Killinger tells us that he had no arrangement whatever with Mr. Hummel, that he was not furnished with money by Mr. Hummel, had no arrangement to pay this and he paid back the money by Mr. Hummel, but that he received the money finally from Mr. Awl on this mortgage, and that he has that money still, but that there was no arrangement or agreement to finally account to Mr. Hummel in regard to it. So that, on the one hand, to determine the question of fact, you have Mr. Hummel's testimony and Mr. Killinger's testimony that there was no arrangement between them; and, on the other hand, you have Mr. Irwin's testimony that Mr. Hummel, he thinks, or Colonel Awl, for Mr. Hummel, must have told him to assign it to Mr. Killinger, or he thinks he would not have done so."

["Now, if you should find that Mr. Hummel did not direct it to be assigned to Mr. Killinger, then there would be nothing whatever in the way of your assuming or finding that Mr. Hummel paid this mortgage off, so far as he was concerned, for the purpose of protecting his property from being sold at the sheriff's sale; and if you find that, we say to you that he had a perfect right to do that—that he had a right to prevent that sale—that Mr. Wareham not having had the mortgage satisfied, and Mrs. Wareham not having it done, Mr. Hummel, having waited until he was about being sold for this debt, had a right to pay it off in order to prevent his property being sold. If you believe Mr. Hummel did pay it off, and understood he was paying this mortgage off to plaintiff's attorney to keep it from being sold, then it would be a perfect de-

[Wareham v. Hummel.]

fense to the plaintiff's claim. Besides that, it would leave Mr. Hummel some $204 37 out of pocket, instead of this plaintiff having any claim against him."]

["It is said here by plaintiff that it was Mr. Hummel's negligence at any rate that allowed it to be transferred to Mr. Killinger. Now, we say that Mr. Hummel was not under any obligations in regard to that. The plaintiffs were negligent in allowing this property to come up for sale. It was their business to pay off this mortgage and not Mr. Hummel's business, and he paid it off when he was forced to do it, according to the testimony, to protect his property from being sold; and he did right to pay that money to the plaintiff's attorney, and it was not negligence in him, after he did pay, not to see that it was satisfied. It was their business to do that, to see it was satisfied, because they should have satisfied it before it came to that point.] Mr. Hummel was acting in self-protection, and they cannot complain of him for doing that. It was transferred, as a matter of fact, to Mr. Killinger, and afterwards, as the testimony shows, Mr. Killinger collected the amount of the mortgage from Mr. Awl. Mr. Awl was the person who, according to the arrangement between all the parties, was to have paid, and, therefore, it was not for Mr. Awl to complain. He simply did what he had agreed to do. Mr. Killinger has the money. [It is said here that this is Mrs. Wareham's money and not Mr. Wareham's, and that, therefore, Mr. Killinger had no right to get this money, and that Mr. Hummel had no right to do anything that would keep it from Mrs. Wareham. It is said that Mr. Hummel, even if not interested in this transfer, owes this money to Mrs. Wareham, and that Mr. Hummel can claim his money from Mr. Killinger. We do not understand this matter in that way. According to the whole testimony in the case, we make it out in this way: That if Mr. Killinger has no right to this money, then he holds it for Mrs. Wareham; he does not hold it for Mr. Hummel; Mr. Hummel has no claim against Mr. Killinger.] [Mr. Hummel paid his money to protect his property from being sold by the sheriff, and we instruct you, as a matter of law, that if you find that Mr. Hummel did pay this money to Mr. Irwin on the day before the property was to be sold by the sheriff, Mr. Irwin being the attorney for the plaintiff on that mortgage, and Mr. Hummel gave no directions that this mortgage should be transferred to any one else, but took it for granted that it would be satisfied, we instruct you that he did all that he was bound to do. If

[Wareham *v.* Hummel.]

you find these facts, that would be a complete defense on his part to the claim in this action.] [If Mr. Killinger has no right to the money that he holds as Mrs. Wareham's, she must look to him for it.] But after allowing it to go on sale, and within one day from the time they were going to sell this property away from Mr. Hummel he had a right to pay to Mr. Irwin, and they cannot complain because he did so. If Mr. Killinger had no right to the mortgage, Mr. Wareham could have come in then and have had the mortgage satisfied upon the docket, or Mr. Wareham could have come in and insisted upon that. [If he had no right to it, and she has any right to it, she could still insist that the money be paid over to her.] But if you find the facts to be, in regard to Mr. Hummel's payment, as he states, that is a sufficient payment for him. As to that you have as evidence, and the only evidence that Mr. Hummel had anything to do with the transfer, the impression of Mr. Irwin; and on the other side you have the evidence of Mr. Hummel himself and the evidence of Mr. Killinger. Mr. Killinger did not claim to hold this by virtue of any arrangement with Mr. Hummel, or in connection with Mr. Hummel. He holds it on an entirely different ground, because, as he testifies, money being due him from Mr. Wareham. It has not been made perfectly clear how this transfer was made to Mr. Killinger, but all we have to ask is, did Mr. Hummel have this transfer made? Did Mr. Hummel intend to keep this mortgage alive on his own property, or did he intend to end this mortgage and get rid of it and save his property from being sold? That is the point of that."

"The plaintiff has presented this point and asked us to affirm it."

"The Court is asked to charge,

"That Mr. Hummel, by his conduct and negligence in not satisfying the mortgage when he paid the money to Mr. Irwin, and permitting it to be assigned to Mr. Killinger, and thereby permitting Mr. Killinger to obtain payment of this money from Mr. Awl, is estopped from saying or claiming that the mortgage was paid by him, (Hummel,) and from successfully claiming that he should not pay this obligation."

"We decline to so charge. We have explained that matter in the general charge. We have told you that if you believe Mr. Hummel paid to have this mortgage satisfied, with costs, without knowing it was to be assigned to Mr. Killinger—if Mr. Hummel was not acquainted with that—that he did all it was his duty to do."

[Wareham *v.* Hummel.]

The counsel for plaintiff excepted to those portions of the charge inclosed between brackets, and the answer to the point presented.

March 14, 1882, verdict for defendant, upon which judgment was entered.

Plaintiff took out a writ of error, assigning as error the rulings of the Court as above.

*Wallace De Witt* for plaintiff in error.

The right of action upon the debt represented by Hummel's note was complete, Awl having paid the debt and the mortgage being satisfied.

When a vendor leaves in the hands of the vendee sufficient purchase money to pay a lien on the property sold, the debt, as between vendor and vendee, becomes the debt of the vendee, and he engages to protect the vendor: Blank *v.* German, 5 W. & S., 36; Burke *v.* Gummey, 13 Wr., 518; Woodward's Appeal, 2 Wr., 326.

By directing or permitting the assignment to Killinger, defendant is estopped from saying that he paid and satisfied the mortgage: Swan *v.* North British Co., 7 Hurls. & Nor., 632; 2 Hurls. & Colt. 175; Cuttle *v.* Brockway, 8 Casey, 45; Newman *v.* Edwards, 10 Casey, 32; Dezell *v.* Odell, 3 Hill, 215; Patterson *v.* Lytle, 1 Jones, 53; Hill *v.* Epley, 7 Casey, 334; Pickard *v.* Sears, 6 A. & E., 469; Bank *v.* Hazard, 30 N. Y., 226.

*J. C. McAlarney* for defendant in error presented no paper-book.

OCTOBER 2, 1882.—PER CURIAM: The law of this case was clearly stated and explained to the jury in a very lucid charge by the learned Judge, and the facts were fairly submitted. It was earnestly contended that there was a duty incumbent on Hummel when he paid the mortgage to see that it was satisfied of record. The jury have found that it was not assigned by Hummel's direction. We think the charge, as complained of in the fourth assignment, was entirely right and it disposes of the whole case.

Judgment affirmed.